IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ESG HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LEAR CORPORATION,<br><br>Defendant. | Civil Action No. 16-743-LPS |

Michael F. Bonkowski and Nicholas J. Brannick, COLE SCHOTZ P.C., Wilmington, DE

Thomas L. Shriner, Jr. and Philip C. Babler, FOLEY & LARDNER LLP, Milwaukee, WI

    Attorneys for Plaintiff ESG Holdings, LLC


Robert W. Whetzel and Todd A. Coomes, RICHARDS, LAYTON & FINGER, P.A.

James P. Smith III and Matthew L. DiRisio, WINSTON & STRAWN LLP, New York, NY

    Attorneys for Defendant Lear Corporation

**MEMORANDUM OPINION**

August 14, 2017
Wilmington, Delaware

*[signature]*

**STARK, U.S. District Judge:**

## I. BACKGROUND

In 2015, Defendant Lear Corporation ("Lear") purchased Everett Smith Group, Ltd. ("Everett") from Plaintiff ESG Holdings, LLC ("ESG"). (*See generally* D.I. 10-1 Ex. A ("Purchase Agreement")) As part of the deal, ESG agreed to indemnify Lear for, among other things, future losses related to Everett's potential liability for cleanup of a Superfund Site. (*See* D.I. 10-1 at 86 of 124) As security, the parties agreed that ESG would put $59.5 million of the sale proceeds in escrow. (*See* D.I. 10-1 Ex. B ("Escrow Agreement"))

The Escrow Agreement gave Lear 18 months to seek disbursements from the escrow account by serving ESG and U.S. Bank, the escrow agent, with notice of an indemnification claim. (*See, e.g.,* Escrow Agreement § 3(c)(i)) In the absence of such a timely claim, the funds would be disbursed to ESG. (*See id.* § 3(d))

On July 1, 2016 – four days before the close of the 18-month window – Lear sent a letter to ESG and U.S. Bank (*see* D.I. 10-1 Ex. C ("Notice")) informing them that Everett had received a March 31, 2016 notice of potential liability from the U.S. Environmental Protection Agency ("EPA"). In the Notice, Lear advised ESG that the EPA had informed Everett that it had selected a remedy for the Superfund Site, which was estimated to cost $1.38 billion, and expressed Lear's view that Everett "may be jointly and severally liable for the cost of implementing the remedy." (Notice at 1) Lear demanded that U.S. Bank refrain from releasing any portion of the $59.5 million in escrow.

On July 29, 2016, ESG sent a letter objecting to Lear's Notice, which ESG contended was invalid. (*See* D.I. 10-1 Ex. D) As a result, the escrow funds remain frozen in U.S. Bank's

1

possession. (*See generally* Escrow Agreement § 3(c)(ii))

ESG sued Lear on August 23, 2016. (*See generally* D.I. 1) It seeks a declaratory judgment "to break the escrow." (D.I. 13 at 4; *see* D.I. 1 at 6-8) On October 4, 2016, Lear moved to dismiss. (D.I. 8) The parties completed briefing (*see* D.I. 9, 13, 14), and the Court heard oral argument on February 22, 2017 (*see* D.I. 17 ("Tr.")).

## II. LEGAL STANDARDS

Evaluating a motion to dismiss under Rule 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, [the] plaintiff is not entitled to relief." *Id.*

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson*

2

*v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

Although a district court ruling on a motion to dismiss generally "may not consider matters extraneous to the pleadings," there is an exception for documents "integral to or explicitly relied upon in the complaint," which may be considered "without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat*, 114 F.3d at 1426 (internal quotation marks and emphasis omitted) (alteration in original).

### III. DISCUSSION

At the heart of this case is the parties' disagreement over the correct interpretation of § 3(c)(i) of the Escrow Agreement. That provision reads:

> From time to time prior to the date that is 18 months after the date of this Agreement ("Release Date"), *[Lear] may provide [ESG] and Escrow Agent with written notice ("Indemnification Notice") of the nature and dollar amount (or a non-binding, good faith reasonable estimate of such amount, which estimate [Lear] shall adjust from time to time to reflect any change in facts or circumstances that would reduce the amount of such claim)* of any claim for which a Buyer Indemnified Party (as defined in the Purchase Agreement) is entitled to indemnification in accordance with Article 8 of the Purchase Agreement ("Buyer Indemnification Claim"). If [ESG] does not provide Escrow Agent and Buyer with a notice disputing the Buyer Indemnification Claim in substantially the form attached hereto as Exhibit B ("Indemnification Claim Objection") prior to 5:00 p.m., Chicago time, on the 30th day after the date on which both Escrow Agent and [ESG] received the Indemnification Notice (and the date

3

> indicated by the written proof of delivery to [ESG] as delivered by [Lear] to Escrow Agent shall be deemed to be the date of delivery to Parent for this purpose), then the dollar amount of the Buyer Indemnification Claim set forth in the Indemnification Notice shall be deemed conclusive for purposes of this Agreement, and on the Business Day immediately following such 30th day, Escrow Agent shall distribute from the Indemnity Escrow Fund by wire transfer of immediately available funds to an account designated by [Lear] the amount of the Buyer Indemnification Claim described in the Indemnification Notice. *Escrow Agent shall not inquire into or consider whether a Buyer Indemnification Claim complies with the requirements of the Purchase Agreement.*

(Escrow Agreement § 3(c)(i) (underlining in original; bold and italics emphasis added)) The parties agree that the relevant language is unambiguous. (*See, e.g.*, D.I. 14 at 3; D.I. 13 at 6 n.5) They further agree that "Delaware law directs the Court to effectuate the intent of the parties." (D.I. 13 at 7 (internal quotation marks omitted); *see also* D.I. 9 at 6)

Lear contends that its Notice appropriately set out the "nature and dollar amount . . . of [a] claim for which [it] . . . is entitled to indemnification." (*See, e.g.*, D.I. 9 at 3) In Lear's view, § 3(c)(i)'s plain language allowed Lear to serve effective notice by providing *either* a dollar amount *or* a reasonable estimate. (*See* D.I. 9 at 7 ("Lear is to give ESG written notice of the 'dollar amount (*or* a non-binding, good faith reasonable estimate of such amount . . .) of any claim . . . .'") (quoting Escrow Agreement § 3(c)(i))) Lear contends it appropriately exercised the former option when it informed ESG of "the exact dollar amount of the EPA claim." (D.I. 9 at 9)[1] In Lear's view, because it provided ESG with the "nature and dollar amount," it was not *also* obligated to provide ESG with a "good faith reasonable estimate of such amount."

---

[1]Lear alternatively proposes that, by passing on the EPA's estimate of the total cleanup cost, its Notice also contained a "good faith reasonable estimate." (D.I. 9 at 8 n.11; *see also* Tr. at 11 ("To the extent that a reasonable estimate of the amount of the EPA's claim was required, the amount that they stated would, by definition, constitute a reasonable estimate of the claim."))

4

ESG argues in response that the Notice's bare inclusion of the EPA's estimate of the total cost of the remediation process was inappropriate, and that there is not yet any "claim" for which Lear is "entitled to indemnification." (*See generally* D.I. 13) ESG reads the parenthetical "reasonable estimate" phrase to be "an explanation or modification of the immediately preceding 'dollar amount' phrase." (D.I. 13 at 7) In ESG's view, then, Lear was not permitted to provide *either* the "nature and dollar amount" *or* a "reasonable estimate" of the amount, but, rather, *had to provide* the "nature and dollar amount," a thing that is more fully described in the parenthetical. Therefore, in ESG's view, under the circumstances Lear had to provide a reasonable estimate of Everett's actual, likely liability, rather than simply passing along the total value of the EPA's claim.[2] (*See* D.I. 13 at 9)

The Court concludes that Lear's interpretation is the correct one. The language contained in § 3(c)(i) of the Escrow Agreement, when viewed in context, shows that the "or" in that provision is, as Lear contends, disjunctive. A "dollar amount" and a "reasonable estimate" of that amount are two different things. The latter, in the context of § 3(c)(i), is not an explanation of the former. It follows that Lear's Notice is not deficient based on its failure to provide a "reasonable estimate," as it is indisputable that Lear did provide ESG with the "dollar amount" of the claim.

ESG further alleges that the Notice is deficient because it failed to inform ESG of a claim for which Lear is "entitled to indemnification." This contention, too, is unpersuasive. ESG

---

[2]As Lear appears to acknowledge, it appears highly unlikely that Everett will ultimately be held responsible for anything approaching the $1.38 billion figure. (*See, e.g.*, Tr. at 10) (Lear's counsel: "[T]he EPA indicated that the amount of the claim could be $1.38 billion. So that is the amount of the claim. Claim doesn't mean Lear's best guess of what their ultimate liability is going to be.")

5

suggests that an "entitle[ment] to indemnification," as contemplated by § 3(c)(i), arises only once Lear "suffer[s] a loss or [is] found definitively liable." (D.I. 13 at 9) But a review of the Escrow and Purchase Agreements makes clear that they use the term "entitled to indemnification" in a manner focusing on the relevant claim's nature and origin, and that a Notice based on "potential liability" (D.I. 13 at 9 (emphasis omitted)) can be effective.

Under either party's interpretation, the relevant provision allows for an indemnification Notice to be built on an "estimate" that Lear must then "adjust from time to time to reflect any change in facts or circumstances that would reduce the amount of such claim." (Escrow Agreement § 3(c)(i)) From this it plainly follows that the parties contemplated that an indemnification Notice might be served on ESG before the amount of the claim was fully crystallized. Similarly, Escrow Agreement § 3(c)(ii) provides for distribution of objected-to indemnification claims upon the parties' joint instruction or "a final, non-appealable court order," demonstrating that indemnification notices (and objections to them) were anticipated to be served at points well prior to a claim having been fully adjudicated and reduced to a definitive dollar figure.

Also, as Lear notes, Article 8 of the Purchase Agreement (which is referenced in Escrow Agreement § 3(c)(i)) "contemplates that such notices will be given well before any 'finding of liability.'" (D.I. 14 at 7) For example, the Purchase Agreement defines a "Third Party Claim" as any "claim *or demand* made by any third party, including any Governmental Entity." (Purchase Agreement § 8.4(a) (emphasis added)) A "demand," as the sophisticated parties to these agreements would well understand, is made well before any finding of liability.

ESG also faults the "speculative" nature of Lear's Notice. (D.I. 13 at 13) ESG contends:

6

"By its very nature, Lear's claim for indemnification is speculative and suppositional, not based on facts, but intended solely to keep ESG's funds in escrow for an extended period; therefore, the indemnification notice was invalid." (*Id.* at 1) The Court disagrees. The EPA has asserted that Everett may be jointly and severally liable (*see* Notice at 1), which is a sufficiently-definite and fact-based basis for making an indemnification request pursuant to the parties' agreements.

ESG further argues that Lear's understanding of the relevant language does not "read [the] contract as a whole" and fails to "give each provision and term effect, so as not to render any part of the contract mere surplusage." (D.I. 13 at 6 (internal quotation marks omitted)) ESG similarly contends that it would not have made "any sense at all" for the parties to agree to an escrow arrangement if Lear could simply tie up the escrow funds by serving notice of the total value of a claim that the parties were well aware of and explicitly accounted for in the Purchase Agreement. (*See, e.g.*, Tr. at 40 ("I don't know how it makes any sense at all that we go through the elaborate ritual of setting up a huge escrow fund, indemnification fund of $60 million if the simple answer is that all Lear had to do was some time in those 18 months say, you know that $1.4 billion claim that is sitting out there? That means we get to keep all of the $60 million tied up, not for 18 months but until whenever this EPA liability is resolved.")) While ESG's explanation of what *ESG* would have preferred to obtain in the negotiations makes sense, the unambiguous contractual language to which the parties agreed in § 3(c)(i) demonstrates that ESG did, in fact, agree to what it now characterizes as nonsensical.[3] It is not the Court's role to relieve

---

[3]In any event, from an objective perspective the parties' agreement does not appear to be nonsensical nor render any provision superfluous. This is because the escrow arrangement to which the parties agreed *did* have value to Lear – notwithstanding ESG's additional obligation to maintain a certain net worth. (*See* Tr. at 47-48) The escrow provision provided Lear a second source for funds (it could rely on the escrow *as well as* ESG's other assets) and one which would

7

a sophisticated party of its voluntarily-undertaken, unambiguous contractual obligation. *See generally Alliance Data Sys. Corp. v. Blackstone Capital Partners V L.P.*, 963 A.2d 746, 770 (Del. Ch.) ("[C]ourts will not alter the terms of a bargain sophisticated parties entered into willingly because a party now regrets the deal."), *aff'd*, 976 A.2d 170 (Del. 2009).

Accordingly, given the Court's interpretation of the unambiguous contractual language, ESG has not alleged a plausible basis for the declaratory and injunctive relief it seeks. Thus, this case will be dismissed.[4]

## IV. CONCLUSION

For the reasons given, Lear's motion (D.I. 8) will be granted and this case will be dismissed for failure to state a claim upon which relief can be granted.

---

be accessible to Lear without litigation.

[4] At oral argument, ESG sought leave to amend should the court come to the conclusion it has now reached. (*See* Tr. at 39) The Court agrees with Lear that any amendment would be futile and, therefore, denies ESG's request. *See generally Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) ("Although a court should grant . . . leave freely when justice so requires, a court may deny leave to amend when such amendment would be futile.") (internal quotation marks and citation omitted).

8